## NORTH LITTLE ROCK HUNTING CLUB et al *v.* D. L. TOON and Nancy Stephens TOON

76-14                                          536 S.W. 2d 709

### Opinion delivered May 24, 1976

*Wilson, Blaney & Dougherty, P.A.,* by: *Mike Wilson,* for appellants.

*William E. Johnson,* for appellees.

J. FRED JONES, Justice. This is an appeal by members of the North Little Rock Hunting Club from a chancery court decree canceling a lease on some real property in Ashley County.

The facts appear as follows: Dr. D. L. Mask and his wife owned some real property in Ashley County and on May 1, 1964, they leased a portion of it for a period of ten years with an option to renew for an additional ten year period. On March 7, 1969, the Masks again leased the property under a written lease[1] appearing as follows:

### D. L. MASK AND HIS WIFE GLADYS MASK

### TO

### J. N. GATHRIGHT, ACTING IN PRESIDENTIAL CAPACITY AND ROY HARPER, ACTING AS SECRETARY AND TREASURER, RESPECTIVELY FOR THE NORTH LITTLE ROCK HUNTING CLUB

This lease entered into this 7 day of March 1969, by and between D. L. Mask and his wife Gladys Mask as Lessors, and J. N. Gathright, acting in presidential

---

[1]This lease was to the same party or parties as was the first lease.

capacity and Roy Harper, acting as secretary and treasurer, respectively, for the North Little Rock Hunting Club, designated hereinafter as lessee,

WITNESSETH:

One: That Lessors for the terms and purposes and considerations hereinafter expressed does [sic] hereby lease, let and demise unto the lessees North Little Rock Hunting Club, North Little Rock, Arkansas, for the purposes of Hunting and Recreation, all the lands contained in the Bearhouse Stock Farm, located in Ashley County, Arkansas, and more particularly described as land lying in the North West [sic] Quarter of the Southwest Quarter of Section 20, Township 15 South, Range 5 West, together with one four room frame house, and one 525 gallon butane gas tank, and all plumbing and piping, situated upon a plot of land lying in the North West [sic] Quarter of the Southwest Quarter of Section 20, Township 15 South, Range 5 West, Ashley County, Arkansas, and further described as beginning at the North West [sic] corner of the yard fence on the Dr. Mask place, thence North Four Hundred and Twenty Feet, thence one hundred and five feet East, then e Four Hundred and twenty feet South to yard fence, .hence one hundred and five feet along said fence to place of beginning, being a parcel of land one half acre wide East and West and two acres long North and South.

Two: The lessors do hereby lease, let and demise the said herein described lands to the lessee for the purposes of hunting and recreation and agrees [sic] to allow no other parties any hunting rights upon said land.

Three: The lessors hereby agree to lease, let and demise unto the lessees, the above described lands for a period of ten years beginning December 31, 1975, and ending December 31, 1985.

Four: The lessees agree to pay the lessors the sum of Nine Hundred Dollars, for the ten year lease upon the

said above described lands, the Nine Hundred Dollars to be paid upon the execution of this lease.

Five: The lessors agree to furnish water at the four room frame house hereinbefore mentioned from a well located on the premises, or from a well or wells located on land adjacent to said house.

Six: The lessors agree to pay the taxes on the herein described lands during the term of this lease and lessor at his option may carry insurance upon said house, and lessors further agree that this lease runs with the land for the period of time herein set forth.

Seventh: It is agreed by the lessors that the lessees shall have quite [sic] enjoyment of said lands and shall at all times have the right of ingress and egress unto and upon above described lands.

Eighth: Lessors warrant they have absolute title to the herein described lands and agree that they will during the term of this lease defend same and hold lessees harmless in its possession of the lands hereof.

Ninth: It is agreed by the lessors that lessees shall have the right to make such improvements to the herein described house as lessee may deem fit or desire, said improvements to remain and revert to lessors upon the termination of this lease if the term of the option extended herein is not exercised.

Tenth: Lessees agree to return the house and improvements herein described in good repair excepting ordinary wear and tear or loss by fire or unavoidable casualty.

Eleventh: Lessors hereby agree to extend this lease for the sum of ten dollars paid to them at the signing and execution of this lease for the option to lease said lands for another ten year period to begin December 31, 1985, and ending December 31, 1995.

Witness our hands and seals this 7th day of March, 1969.

The copy of this lease appearing in the record appears to be a photostatic copy of the lease as filed for record in Book M-48 at page 121 of the records in Ashley County at 1:00 p.m. on March 7, 1969.

On August 19, 1970, the Masks sold 80 acres which included the lands previously leased as above set out, to the appellees Dr. D. L. Toon and his wife and transferred title to Dr. and Mrs. Toon by warranty deed, which was duly filed for record on August 19, 1970. On April 16, 1975, Dr. and Mrs. Toon filed a complaint in the chancery court against defendants designated as follows:

North Little Rock Hunting Club, J. N. Gathright, Bill Lehman, and Ray Harper, or their successors, individually and as officers, trustees, and directors of North Little Rock Hunting Club, and all unknown members, trustees, or officers of North Little Rock Hunting Club and W ½ SW ¼ of Section 20, Township 15 South, Range 5 West, Ashley County.

Dr. and Mrs. Toon in their complaint alleged that they were the owners and entitled to possession of the property they acquired from the Masks. They alleged that Dr. and Mrs. Mask attempted to lease a part of the property to the North Little Rock Hunting Club; that the purported lease agreement was void and unenforceable as an attempt to convey real property interest to an unincorporated association which has no power to acquire property; that the lease was vague and indefinite as to the property intended to be conveyed; that the lease was oppressive and inequitable in its terms and conditions, specifically as to the rentals called for thereunder, which provision would unjustly enrich the defendants; that the language in the lease was not sufficient to convey any right or interest in and to the lands and was not legally sufficient to bind the successors and grantees of the lessors. The complaint then set out in the alternative various allegations as to breach of the lease agreement as to reasonable care in guarding the property against waste and

damage. They prayed for cancellation of the lease and that the title to the property be quieted and confirmed in them.

The appellant-defendants demurred to the complaint on the ground that it did not state a cause of action against them and the demurrer was set for hearing on June 2, 1975. On May 22, 1975, the appellant-defendants filed an answer and counterclaim. In answer they reaffirmed their demurrer and denied the allegations in the complaint by general denial. In their counterclaim they alleged that the appellee-plaintiffs had shut off their access to water in violation of the lease agreement, and had cut all the oak timber from the leased premises thereby damaging valuable hunting rights and they prayed damages and for all proper relief.

Following a reply to the counterclaim, the matter was set for trial on September 2, 1975, reset for September 4, 1975, and continued to October 14, 1975.

In answer to interrogatories propounded by appellees' attorney, the appellants' attorney stated that the North Little Rock Hunting Club was an unincorporated association and listed the officers and directors as Danny Fortner, president; Marvin Cash, vice-president; and Jimmy Hickman, secretary-treasurer.

Dr. D. L. Toon's discovery deposition was placed in evidence by the appellants' attorney after which the appellants filed a motion for summary judgment. The appellants filed a trial court brief in support of their motion for summary judgment and among other things they stated in their brief as follows:

> There is no argument, for the purpose of this motion, that the parties are properly before the court and that plaintiffs acquired the property as alleged in the Complaint. The lease agreements, which are the subject to the action, are attached to the Complaint. Paragraph 4 of the Complaint consists entirely of allegations which are purely a question of law. Paragraph 4 (a) alleges that the defendant Club is an unincorporated association which does not have the power to acquire property.

At common law, voluntary unincorporated associations may hold real property either as donees of the legal title or as the beneficiaries of a trust. *Town of Gravette* v. *Veach,* 186 Ark. 544, 54 S.W. 2d 704.

When the case came on for hearing on October 14, 1975, the issues were disposed of as a matter of law and the record of the procedure appears as follows:

COURT: This is in the Chancery Court of Ashley County, Arkansas, D. L. Toon and Nancy Stephens Toon, plaintiffs, v. North Little Rock Hunting Club, et al, Case No. 75-111. The plaintiffs are represented by Mr. William Johnson and the defendants by Mr. Mike Wilson, Little Rock. Are you gentlemen ready?

MR. JOHNSON :Yes, your Honor.

MR. WILSON: Yes, your Honor.

COURT: Any preliminary matters now, gentlemen? I notice a motion for summary judgment here. What is your position on that at this point?

MR. WILSON: If your Honor please, that motion was filed for the purpose of narrowing the issues and the court had indicated that such motions were not exactly looked upon with favor in this court.

COURT: They are looked upon with favor if you can substantiate it.

MR. WILSON: Right. And I understand that the court wished to hear the parties in person as to the testimony to be offered now. That there may be a question of law that will dispose of the case as to whether this unincorporated association may hold title to this property or as the lessee of the property and we have offered to stipulate and will stipulate that the association is unincorporated.

COURT: How about you, Mr. Johnson?

MR. JOHNSON: Your Honor, I am in agreement with Mr. Wilson in regard to this particular legal issue. I feel like the case may very well be disposed of on this issue alone as to whether an unincorporated association can be the lessee in this case and of course, one of the particular things alleged in the petition that was filed by Dr. and Mrs. Toon is that the lease is void for these

reasons that the hunting club is an unincorporated association.

COURT: If the court were to hold that the lease was void on that basis, Mr. Wilson, where would you be?

MR. WILSON: Your Honor, we would be in a position to appeal immediately on that question alone.

COURT: The case would be decided insofar as the issues are concerned as to you. Right? If the court were to hold that an unincorporated association could not hold a valid lease.

MR. WILSON: That's right.

COURT: As a matter of law.

MR. WILSON: Yes, sir.

COURT: Do you agree with that, Mr. Johnson?

MR. JOHNSON: Yes, sir, I do.

COURT: Well then, gentlemen, the court doesn't mind deciding that if you have got some authority for me this morning. I haven't researched the point. Now assume for a moment that the court were to hold that the association could hold a valid lease then we are ready to proceed with other issues. Is that correct?

MR. WILSON: Yes, sir.

MR. JOHNSON: Either to stand on the court's ruling and appeal or to proceed with the development of the remaining issues as to whether these have been breached.

COURT: Very well, gentlemen, let's hear you on this point then.

It was stipulated that the North Little Rock Hunting Club was an unincorporated association, and the two leases and warranty deed were stipulated into the record, after which the chancellor heard the arguments in chambers and, following a recess while the chancellor read the decisions cited, the record continues as follows:

COURT: Let this record reflect that counsel and the court have been in chambers and that the issue of the validity of the leases involved in this lawsuit have been discussed and that under the authority and direction of *Lael* v. *Crook*, 192 Ark., page 1115, this court finds as a matter of law that the two leases now in evidence, Ex-

hibits 2 and 3, are invalid for the reason that the granting clause thereof conveys an interest in real property to an unincorporated association and the holding of the *Crook* case being that such a conveyance is invalid, it is noted by this court that the opinion in *Gravette* v. *Veach* was specifically overruled insofar as it was in conflict with the *Crook* case. * * * For that reason, gentlemen, the court is going to dismiss this case at this point. There would be no further issue remaining, would there, Mr. Wilson?

MR. WILSON: Of course, your Honor, if the Supreme Court reverses this court's decision there will be several other issues.

We now consider, in the order designated, the points raised by the appellants for reversal.

I

The trial court erred in holding that the leases marked Exhibits 2 and 3 are invalid for the reason that leases convey an interest in real property to an unincorporated association incapable of holding as lessee.

The appellants argue under this point that the case at bar is not controlled by *Lael* v. *Crook,* 192 Ark. 1115, 97 S.W. 2d 436 (1936), because *Lael* involved a conveyance of title to real property whereas the case at bar only involves the encumbrance of title by a lease. This argument is unsound and without merit. In *Chittim* v. *Gossett,* 148 Ark. 654, 228 S.W. 393 (1921), we said:

A lease is properly a conveyance of a particular estate in lands, whether for life or for years or at will when reversion is left in the grantor. 2 Blackstone Comm. 367; Tiedeman on Real Property, § 772.

II

The trial court misconstrued the terms of the lease in that the leases were signed on behalf of the North Little Rock Hunting Club by Trustees for the hunting club,

acting in a trust capacity.

The lease here involved and as above set out, is somewhat ambiguous on its face as to whether it was to the named individual officers in trust for the club, or to the club as lessee. No question as to a trust relationship was raised at the trial level but as we read the record, that question was specifically eliminated by submitting the matter to the chancellor strictly on a question of law as to whether the hunting club, as an unincorporated association, could, in its own name, acquire and hold title to real property in Arkansas. The chancellor, under authority of *Lael* v. *Crook, supra,* held that it could not and we are of the opinion the chancellor was right.

## III

The trial court erred in holding that appellees were not estopped from attacking the validity of the leases.

This assignment is likewise without merit. In *American Cas. Co. of Reading, Pa.* v. *Hambleton,* 233 Ark. 942, 349 S.W. 2d 664 (1961), this court said:

A party who by his acts, declarations or admissions, or by failure to act or speak under circumstances where he should do so, either designed or with willful disregard of interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for such misleading influence, will not be allowed, because of estoppel, afterwards to assert his right to the person so misled. *Dobbins* v. *Martin Buick Co.,* 216 Ark. 861, 227 S.W. 2d 620; *Williams* v. *Davis,* 211 Ark. 725, 202 S.W. 2d 205; *Rogers* v. *Hill,* 217 Ark. 619, 232 S.W. 2d 443.

The record in the case at bar fails to show that appellees acted or failed to act in such manner as to mislead appellants to their detriment, and we conclude that the decree must be affirmed. We note from the record, however, that the appellees tendered into the registry of the trial court a refund of the unearned portion of the lease rental paid in advance and the chancellor's decree failed to dispose of same. We are

of the opinion that such refund is equitable under the evidence in this case and the cause should be remanded for the purpose of making same.

The decree is affirmed and the cause remanded for the purpose above stated.