### BASKINS *v.* UNITED MINE WORKERS OF AMERICA.

## Opinion delivered November 7, 1921.

1. PARTIES—UNINCORPORATED ASSOCIATION.—An unincorporated association cannot, in the absence of a statute authorizing it, be sued by its society or company name, but all the members must be made parties, since such bodies, in the absence of statute, have no legal entity distinct from that of their members.

2. PARTIES—UNINCORPORATED ASSOCIATION.—A suit at law against an unincorporated association by name cannot be sustained under Crawford & Moses' Dig., § 1098, providing that "where the question is one of a common interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all."

3. ASSOCIATIONS—SERVICE ON AGENT.—Where an association cannot be sued in its society name, service of summons on one of its agents is insufficient to bring it into court.

4. PARTIES—UNINCORPORATED ASSOCIATION.—Crawford & Moses' Dig., chap. 175, authorizing trade unions to adopt a label and to proceed by suit to enjoin the unauthorized use thereof, does not authorize a suit against an unincorporated association by name.

Appeal from Sebastian Circuit Court, Ft. Smith District; *John Brizzolara,* Judge; affirmed.

#### STATEMENT OF FACTS.

Appellants sued appellee, United Mine Workers of America, an unincorporated association, to recover damages for the negligent killing of John Baskins. Mrs. John Baskins sued for herself, and as next friend of Allie Baskins, Buster Baskins, Gladys Baskins, Victor Baskins, and Kirby Baskins, minors.

According to the allegations of the complaint she is the widow of John Baskins, deceased, and the other appellants are their minor children. United Mine Workers of America is an unincorporated association of coal miners, and its headquarters are situated in Indianapolis in the State of Indiana. It is divided into thirty districts, and has numerous local unions located in different States of the United States. The local unions are part of the particular district branch having jurisdiction of the

territory in which the local unions are situated. Every member of any other local union and district is a member of the United Mine Workers of America and subject to its constitution and by-laws. The membership of the United Mine Workers of America exceeds four hundred thousand miners, most of whom are employed by the various union mines.

District 21 of the United Mine Workers of America is a branch organization, and has jurisdiction over all union mines and miners in the States of Arkansas, Oklahoma and Texas. John P. White was president of the United Mine Workers of America during the year 1914. John Wilkerson was president during that year of district 21 of the United Mine Workers of America. Certain other persons are named in the complaint as officers of the United Mine Workers of America with their residence in the town of Midland, Ark.

The complaint further alleges that in 1914 the United Mine Workers of America ordered and promulgated a strike of all union miners employed by the Prairie Creek Coal Mining Company, and that while said strike was in progress John Baskins was employed by said Coal Mining Company as one of the caretakers of its mine; that while so employed on the 22nd day of July, 1914, he was taken by union miners who were members of the United Mine Workers of America to a lonely cabin and shot to death, by one of the guards who had him in charge, together with other non-union miners. Appellants allege that they were dependent on the said John Baskins for support and education, and prayed judgment in the sum of $100,000 damages.

The suit was filed in the circuit court on the 24th day of March, 1920. Summons was issued against the United Mine Workers of America and service of summons was had by the sheriff's delivering a copy of it to John Wilkerson, president of district 21 of the United Mine Workers of America.

A motion to quash service was filed. The motion states that the United Mine Workers of America is a

voluntary unincorporated association, and is not engaged in any kind of business. It is composed of about 500,000 individuals who labor for themselves in the coal mines throughout the United States and Canada. The association was organized for the mutual betterment of its members and to obtain better working conditions for them.

The court found that the defendant, the United Mine Workers of America, was a voluntary unincorporated association, and was named in its society name as defendant in the action; that said association can neither sue nor be sued under its society name under the laws of the State of Arkansas, and service of summons cannot be had upon it by serving the same upon Wilkerson, the president of the district No. 21 of the United Mine Workers of America. It was therefore adjudged that the service of summons and the return of the sheriff be quashed and vacated.

From the judgment rendered appellants have duly prosecuted an appeal to this court.

*J. E. London,* for appellant.

1. The United Mine Workers may be sued as an association under our code. Crawford & Moses' Digest, § 1098; 101 Ark. 172; 97 Wash. 282; 30 Nev. 270; 95 Pac. 354; 138 Fed. 769; 23 Wyo. 352; 149 Fed. 913; 150 *Id.* 517; 57 U. S. 288; 81 Pac. 1069; 85 N. E. 897; 200 Mass. 110; 189 *Id.* 294; 107 N. Y. Supp. 303; 227 N. Y., 1; 85 Fed. 252; 28 Utah 495; 160 Ill. 282.

The code provision merely applies the long-standing rule in equity cases arising at common law.

2. The United Mine Workers of America may be held to respond in damages for the death of the husband and father of plaintiffs in this case. 235 Fed. 1; 149 *Id.* 913; 150 *Id.* 517; 263 *Id.* 147, 152; 265 *Id.* 397; 120 *Id.* 102; 150 *Id.* 155; 208 *Id.* 335; 236 *Id.* 964.

*Webb Covington* for appellee.

1. Appellees being a voluntary unincorporated association, cannot, in the absence of a specific statute authorizing suit against it, be sued in its association name

for the torts of its membership.    180 Fed. 896; 129 U.
S. 426; 171 Fed. 636; 72 *Id.* 695; 83 *Id.* 912; 2 L. R. A.
(N. S.) 788; 102 N. W. 725; 22 Enc. P. &. P. § 242; 54
N. W. 188; 79 S. W. 139; 74 Mich. 269; 20 Atl. 942; 31
S. W. 91; 54 Tex. 476; 22 Ohio St. 168; 52 Ga. 352; 97
Pa. St. 498; 150 Fed. 155, 182; 102 N. W. 725; 7 Neb.
246; 66 *Id.* 252; 140 Ark. 124.

Section 1098, C. & M. Digest, does not admit of the
construction placed on it by counsel for appellants.    This
State has adopted by statute the chancery rule applied
in England and in equity procedure, but this rule has
not been extended to actions at law.    It has been al-
most uniformly held that in a proceeding in  equity
against certain members as representatives of an as-
sociation composed of a large number of members, a
number may be made parties defendant as represent-
atives of the class, but in such cases it was held that the
association could not be proceeded against in its as-
sociation name.    (1901) Am. Cas. 426; 70 L. J. K. B.
(N. S.) 905; 85 Law Times (N. S.) 147; 17 Times L. R.
698.

2.    If the United Mine Workers of America be held
to be a legal entity and subject to suit, the service, never-
theless, in this case is insufficient.    District No. 21 of the
United Mine Workers was not joined as a defendant.
Wilkerson, its president, was not an officer of the United
Mine Workers of America nor its agent.

HART, J.    (after stating the facts).    The judgment
of the circuit court was correct.    There is no principle
better settled than that an unincorporated association
cannot, in the absence of a statute authorizing it, be sued
in tis society or company name, but all the members
must be made parties, since such bodies have, in the
absence of statute, no legal entity distince from that
of their members.    5 C. J. 1369; *Karges Furniture Co.*
v. *Amalgamated Woodworkers' Local Union* (Ind.) 2
L. R. A. (N. S.) 788; *St. Paul Typothetae* v. *St. Paul
Bookbinders' Union* (Minn.) 3 Ann. Cas. 695.    The com-
mon-law rule is recognized and followed by an unbroken

line of authorities from many States which are cited in a case note to 3 Ann. Cas. at p. 699. The common-law rule was recognized by this court in *Lewelling* v. *M. W. W. Underwriters,* 140 Ark. 124. In that case there was a statute providing for suits against certain insurance associations under their society name.

This is an action at law, and the equity doctrine of virtual representation has no application. There is within the power of a court of equity to name as defendants in certain classes of cases a few individuals who are in fact the representatives of a large class having a common interest or a common right—a class too large to be brought into court by a service on the individuals composing the class. See 20 R. C. L. p. 672; 5 C. J. p. 1371, and case note to Ann. Cas. 1913-C at p. 655, and Pomeroy's Code Remedies (4 Ed.) par. 285-291.

It is the contention of counsel for appellants that § 1089 of Crawford & Moeses' Digest applies to both legal and equitable actions since no limitation is contained in its language. On the other hand, it is the contention of counsel for appellee that the section of the statute is a re-enactment of the rule which already prevailed in equity, and is to be given a construction which will make it identical with the pre-existing equity doctrine. We need not decide this question for the reason that there was no attempt to comply with the statute. The section reads as follows: "Where the question is one of a common interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all."

No attempt was made by appellants to sue certain persons as defendants who were in fact the representatives of a large class having a common interest. The suit was against the association itself by its society name. It is true, service was had upon the president of the district union in whose territory the tort is alleged to have been committed, but the president was not sued as an individual, or as the president of the district union. The

United Mine Workers of America was sued by its society name, and this, as we have already seen, could not be done, in the absence of a statute authorizing it. If the United Mine Workers of America could not be sued by its society name, service of summons on one of its agents is insufficient for the purpose of bringing the association into court, in the absence of a statute authorizing it. If appellants had sued certain individual members of the association as the representatives of all the class, then the application of the section of the statute just quoted to legal as well as equitable actions would be involved, but our statute does not authorize the bringing of actions against unincorporated associations in their common name.

In *Curators of Central College* v. *Bird,* 148 Ark. 323, the court held that a suit cannot be maintained by the curators of a college where they are not named as individuals or not alleged to be a corporation. The complaint in this case alleged that certain named persons are officers of the union, but they are not sued as individuals or as representatives of a class. The United Mine Workers of America is sued by its society or common name.

Again it is insisted that the judgment should be reversed because the suit is authorized under chapter 175 of Crawford & Moses' Digest relating to Trade Unions. We do not think that this chapter of the digest has any application under the facts of the present case. It provides that labor unions may adopt a label and may proceed by a suit to enjoin the unauthorized use, display, and sale of any imitation thereof. Statutes of this sort, being in derogation of the common law, are strictly construed and the prescribed method of procedure can only be followed in the action designated in the statute. The present action does not come within the class mentioned in chapter 175 of Crawford & Moses' Digest.

The result of our views is that the judgment of the circuit court was correct, and must be affirmed.